91 U.S. 317
 23 L.Ed. 396
 UNITED STATES
v.
ASHFLELD.
 October Term, 1875
 
 APPEAL from the Court of Claims.
 The facts are stated in the opinion of the court.
 Mr. Assistant Attorney-General Edwin B. Smith and Mr. John S. Blair for the United States, and Mr. J. M. Carlisle and Mr. J. D. McPherson for the appellee.
 MR. CHIEF JUSTICE WAITE delivered the opinion of the court.
 
 
 1
 Ashfield was employed as a watchman in reservation No. 2, part of the public grounds in Washington, from July 1, 1869, until April 12, 1870. He has been paid for his services at the rate of $720 a year. He claims compensation at the rate of $900 a year; and this suit is brought to recover the difference between what he has received and what he claims.
 
 
 2
 The fifth section of the 'Act making appropriations for sundry civil expenses of the government for the year ending June 30, 1867, and for other purposes,' passed July 28, 1866 (14 Stat. 321), provided 'that each watchman in the public buildings and grounds under the commissioner of public buildings, whose pay is less than $1,000 a year, shall, from the first day of July, 1866, receive a compensation of $900 per annum.' The claimant insists that this provision had not been repealed when he performed his services, commencing July 1, 1869; and that it fixes the rate of his compensation after that time. It is conceded that there was not, prior to the Appropriation Act for the year ending June 30, 1870, any express change of this provision. The act making appropriations for the year ending June 30, 1867, provided 'for compensation of two watchmen, in reservation No. 2, $1,200.' 14 Stat. 206. At the next session there was included in the deficiency bill, under the head of the 'Department of the Interior,' an appropriation of the further sum of $2,000, 'to enable the commissioner of public buildings to pay to the watchmen mentioned in the fifth section of the act . . . the difference between their pay as fixed prior to the passage of that act and the allowance made by said section.' 14 Stat. 374. In the Appropriation Act for the year ending June 30, 1868, $4,500 was appropriated 'for the compensation of five watchmen in reservation No. 2' (14 Stat. 456); and in that for the year ending June 30, 1869, $5,000 for the same purpose. 15 Stat. 96. The claimant received for his services during the last of these years $1,000. There was no other provision for this increased compensation than such as may be inferred from the increase of appropriation for the service. He does not now seek to have his compensation regulated by this act. In his petition he only asks to be paid in accordance with the act of 1866, and at the rate of $900 a year.
 
 
 3
 In the 'Act making appropriations for the legislative, executive, and judicial expenses of the government for the year ending June 30, 1870,' under the head of 'Public Buildings and Public Grounds,' $3,000 was appropriated 'for compensation of watchmen in reservation No. 2.' 15 Stat. 286. There is no designation of the number to be employed. At the end of the first paragraph, under the head of 'Department of State,' after certain appropriations, a proviso is inserted in the following words: 'Provided that the pay of any messenger in either of the departments, executive or judicial, of the government, shall be $840 per annum, and no more; . . . and the pay of all laborers and watchmen . . . employed as afore stated shall be $720 per annum, and no more.' P. 287. And at the end of the appropriations, under the head of the 'Department of Agriculture,' these words are found: 'And this act shall not be so construed as to reduce the compensation of any employ e of the government below the amount allowed in the last or present appropriation bill.' P. 298.
 
 
 4
 If five watchmen should be employed for the year commencing July 1, 1869, the appropriation actually made would give them compensation only at the rate of $600 a year, if equally divided between them. The findings of the Court of Claims do not show how many were employed; but in the deficiency bill of April 20, 1870 (16 Stat. 90), $600 was appropriated 'to pay five watchmen, employed in reservation No. 2, $120 each, in order to make their entire pay for the current year $720 each.' Thus it appears that five watchmen were actually employed in these grounds, and that the appropriation as originally made left a deficiency for their compensation at the rate of $720.
 
 
 5
 The office of 'commissioner of public buildings' was created by the act of April 29, 1816. 3 Stat. 324, sect. 2. The commissioner was, for certain purposes, placed under the supervision of the President. On the 3d March, 1849, the Department of the Interior was established (9 Stat. 395), and the supervisory powers of the President over the commissioner were transferred to the secretary of that department. Sect. 8. In the Appropriation Act of Aug. 4, 1854 (10 Stat. 573, sect. 15), it was made the duty of the commissioner to report his operations annually to the Secretary of the Interior, and to submit to the same officer his estimates for approval and transmission to Congress with the annual message of the President. On the 2d March, 1867, the office of commissioner of public buildings was abolished, and its duties transferred to the chief engineer of the army. 14 Stat. 466, sect. 2.
 
 
 6
 Under the ruling of this court in Manning's Case, 13 Wall. 579, the office of commissioner of public buildings, being under the supervision of the Department of the Interior, was a bureau or division of that department. That was one of the executive departments of the government. The chief engineer of the army performs the duties which belonged to the commissioner. He is under the supervision of the Department of War, which, by the act of March 30, 1867, was charged with the direction of the expenditure of all moneys appropriated for the public works of the district. 15 Stat. 12. We are, therefore, clearly of the opinion that Ashfield was a watchman employed in one of the executive departments of the government. For this reason, he comes within the operation of the proviso of the act of 1869 which has been stated. It makes no difference that the proviso is inserted in that part of the act which relates to appropriations for the Department of State. It is general in its language, and applies to watchmen in each of the several executive and judicial departments.
 
 
 7
 Neither do we think it affects the case, that at the head of the act, and after the enacting clause, the word 'LEGISLATIVE' appears. The act is one making appropriations for the legislative, executive, and judicial departments; but there is no attempt to assign the particular subject of appropriation to any one of these several departments. The appropriation is made for the purpose specified, and the laws organizing the several departments assign it to the one to which it properly belongs. If the theory on which the argument proceeds is correct, then all the appropriations made by the act are for the legislative department; for there is nothing to separate the executive and judicial departments from the legislative, any more than there is the public grounds. The different subdivisions of the section are intended to classify the appropriations, not to designate the department to which they belong.
 
 
 8
 The compensation of the watchmen in reservation No. 2 was fixed, therefore, for the year ending June 30, 1870, at $720, unless the proviso which so declares is overcome by the subsequent clause declaring that nothing in the act should be so construed as to reduce the compensation of any employ e below the amount allowed in the last or present appropriation bill. As has been seen, the last previous appropriation bill did not in terms allow or fix any special rate of compensation for this service. On that account, the claimant in this case seeks to avail himself of the act of 1866. But that is not one of the appropriation bills referred to in this saving clause. We are left, then, to the act of 1869 alone; and that fixes the rate at $720. The clause relied upon was undoubtedly intended to provide for cases where the appropriation made was not sufficient to pay in full at the rate of compensation fixed.
 
 
 9
 There is nothing in the record sent here by the Court of Claims to show that the United States presented any counterclaim before the case was heard and decided. The addition to the record which has been made fails to show at what time the counterclaim was presented to the court below, or that it was ever filed in the cause.
 
 
 10
 The judgment is reversed, and the cause remanded with instructions to dismiss the petition.